UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

429-441 86TH STREET LLC,

                                   Plaintiff,

        vs.

TOWN SPORTS INTERNATIONAL
HOLDINGS, INC.,

                              Defendant.

Case No. 21-cv-01356 (ALC)

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION TO DISMISS OR TRANSFER DEFENDANT'S COUNTERCLAIMS**

---

WACHTEL MISSRY LLP
One Dag Hammarskjold Plaza
885 Second Avenue, 47th Floor
New York, New York 10017
(212) 909-9500

*Attorneys for Plaintiff 429-411 86th Street LLC*

Of Counsel:

    Marc Litt
    Stella L. Sainty

## Table of Contents

Page

Table of Authorities.................................................................................................... iii

Preliminary Statement................................................................................................1

Factual and Procedural Background ...........................................................................1

    First Amendment of Lease .....................................................................................2

    Delaware Bankruptcy Court Proceedings...............................................................3

    TMPL Bay Ridge 86th LLC ...................................................................................5

    The Instant Action .................................................................................................6

Argument ...................................................................................................................6

I.      Defendant's Counterclaims Fail to State a Claim Upon Which Relief
       Can Be Granted...................................................................................................6

      A.    Defendant's First Counterclaim for Breach of Contract Must
          Be Dismissed With Prejudice.................................................................7

          1.    Defendant Fails to Plausibly Allege Satisfaction of a
              Condition Precedent....................................................................7

          2.    Defendant Did Not Seek an Assignment of the Lease and
              Its Allegation to the Contrary Is Provably False.........................11

          3.    Neither Defendant nor TMPL Sought an Assignment
              from the Debtor-Tenant in Bankruptcy Court.............................11

          4.    Notice of the Improper Assignment was Defective .....................15

          5.    The Lease Terminated Before TMPL Sent Its Letter..................15

      B.    Defendant's Second Counterclaim for Unlawful Eviction
          Pursuant to RPAPL § 853 Must Be Dismissed With Prejudice .............16

          1.    Defendant Lacks Standing to Invoke the Protections of
               RPAPL § 853 Because It Was Never A Party to the Lease
               or in Possession of the Premises ................................................16

          2.    Plaintiff Cannot Be Liable for Wrongful Eviction under
               RPAPL § 853 Because Tenant Abandoned the Premises
               and Terminated the Lease ..........................................................18

II.    Defendant's Counterclaims Must Be Heard, If at All,
       in Delaware Bankruptcy Court ................................................................................18

       A.    Bankruptcy Court Has Exclusive Jurisdiction over
             Defendant's Counterclaims ................................................................................19

       B.    The Court Should Transfer Defendant's Counterclaims
             in the Interest of Justice ................................................................................21

III.   Defendant's Third Affirmative Defense for Want of Diversity Jurisdiction
       Should Be Stricken ................................................................................24

Conclusion ................................................................................25

**Table of Authorities**

Cases ................................................................................................................................. Page(s)

*219 Broadway Corp. v. Alexander's, Inc.*,
   46 N.Y.2d 506 (1979).................................................................................................. 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 6, 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................. 6, 7

*Berman v Informix Corp.*,
   30 F. Supp. 2d 653 (S.D.N.Y. 1998) ........................................................................ 23

*Biro v. Condé Nast*,
   807 F.3d 541 (2d Cir. 2015) ...................................................................................... 8

*Bozewicz v. Nash Metalware Co.*,
   284 A.D.2d 288 (2d Dept 2001)................................................................................ 16

*Chesapeake Square Hotel, LLC v. Logan's Roadhouse, Inc.*,
   995 F. Supp. 2d 512 (E.D. Va. 2014) ........................................................................ 8

*Comerica Leasing Corp. v. Bombardier Inc.*,
   No. 16 CIV. 614 (PGG), 2019 WL 11027701 (S.D.N.Y. Sept. 30, 2019)...................... 8, 9, 10

*David Fanarof, Inc. v. Dember Const. Corp.*,
   195 A.D.2d 346 (1st Dept. 1993)............................................................................... 9

*Dervan v. Gordian Grp. LLC*,
   No. 16-CV-1694 (AJN), 2017 WL 819494 (S.D.N.Y. Feb. 28, 2017)........................... 8

*Dinger v. Cefola*,
   133 A.D.3d 816 (2d Dept 2015)................................................................................ 16

*Faber v. Metro. Life Ins. Co.*,
   648 F.3d 98 (2d Cir. 2011) ....................................................................................... 7

*Fernandez v. UBS AG*,
   222 F. Supp. 3d 358 (S.D.N.Y. 2016) ....................................................................... 11

*Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*,
   554 U.S. 33 (2008)................................................................................................... 15

*Gold v. Schuster*,
   264 A.D.2d 547 (1st Dept. 1999)............................................................................... 16, 17

*Hohl v. Bastian*,
 279 B.R. 165 (W.D. Pa. 2002) ............................................................... 19

*In re Chateaugay Corp.*,
 10 F.3d 944 (2d Cir. 1993) ............................................................... 12, 14

*In re Cohoes Indus. Terminal, Inc.*, 70 B.R. 214 (S.D.N.Y. 1986),
 *aff'd sub nom. In re Cohodes Indus. Terminal Inc.*, 831 F.2d 283 (2d Cir. 1987) ................... 16

*In re Extraction Oil & Gas*,
 622 B.R. 608 (Bankr. D. Del. 2020) ...................................................... 12, 13

*In re Lehman Bros. Holdings Inc.*,
 594 B.R. 33 (Bankr. S.D.N.Y. 2018) ...................................................... 22, 23

*In re Mercury Masonry Corp.*,
 114 B.R. 35 (Bankr. S.D.N.Y. 1990) ........................................................... 19

*In re Old Carco LLC*,
 424 B.R. 633 (Bankr. S.D.N.Y. 2010) ......................................................... 13

*In re Pub. Serv. Co. of New Hampshire*,
 884 F.2d 11 (1st Cir. 1989) ..................................................................... 12

*In re Trans World Airlines, Inc.*,
 261 B.R. 103 (Bankr. D. Del. 2001) ...................................................... 13, 14

*In re Wheeling-Pittsburgh Steel Corp.*,
 108 B.R. 82 (Bankr. W.D. Pa. 1989) ........................................................... 19

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
 146 F.3d 66 (2d Cir. 1998) ....................................................................... 3

*Kalamazoo-Realty Venture Limited Partnership v. Blockbuster Entertainment Corp.*,
 249 B.R. 879 (D. Ill. 2000) ............................................................... 20, 23

*Kurz v. EMAK Worldwide, Inc.*,
 464 B.R. 635 (D. Del. 2011) ................................................................... 19

*Lerner v. Fleet Bank*,
 459 F.3d 273 (2d Cir. 2006) ................................................................... 11

*Merritt Hill Vineyards Inc. v. Windy Heights Vineyard, Inc.*,
 61 N.Y.2d 106 (1984) ............................................................................ 9

*MHR Capital Partners v. Presstek*,
 12 N.Y.3d 640 (2009) ............................................................................ 9

*N.L.R.B. v. Bildisco,*
    465 U.S. 513 (1984) ............................................................................................ 12

*Napster, LLC v. Rounder Records Corp.,*
    761 F. Supp. 2d 200 (S.D.N.Y. 2011) ........................................................... 8, 10

*Nieves v. 331 E. 109th St. Corp.,*
    112 A.D.2d 59 (1st Dept. 1985) ........................................................................ 18

*O.F.I. Imports Inc. v. Gen. Elec. Capital Corp.,*
    No. 15-CV-7231 (VEC), 2017 WL 3084901 (S.D.N.Y. July 20, 2017) .......... 7, 8, 10

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.,*
    86 N.Y.2d 685 (1995) .......................................................................................... 8

*Runquist v. Koeppel,*
    146 Misc. 2d 569, 551 N.Y.S.2d 765 (Civ. Ct., NY County 1990) ................... 17

*Salem v. U.S. Bank Nat'l Ass'n,*
    82 A.D.3d 865 (2d Dept. 2011) ......................................................................... 18

*Starr v. Sony BMG Music Entm't,*
    592 F.3d 314 (2d Cir. 2010) ................................................................................ 7

*Utica Mut. Ins. Co. v. Clearwater Ins. Co.,*
    906 F.3d 12 (2d Cir. 2018) ............................................................................... 8, 9

*Video Voice, Inc. v. Loc. T.V., Inc.,*
    156 A.D.3d 848 (2d Dept 2017) ......................................................................... 18

*Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC,*
    736 F. App'x 274 (2d Cir. 2018) ......................................................................... 7

*ZCWK Assocs., L.P. v. Spadaro,*
    233 A.D.2d 126 (1st Dept. 1996) ...................................................................... 17

**Statutes**

11 U.S.C. § 365 ...................................................................................... 12, 19, 21

11 U.S.C. § 541 ................................................................................................ 19

28 U.S.C. § 1334(e) .............................................................................. 11, 19, 20, 21

28 U.S.C. § 1391 .............................................................................................. 22

28 U.S.C. § 1404(a) ..................................................................................... 18, 21

28 U.S.C. § 1412 ......................................................................................... 18, 21

Fed. R. Civ. P. 9(b) ......................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ................................................................................. 6

Fed. R. Civ. P. 9(c) ....................................................................................... 7

N.Y. Real Property Actions and Proceedings Law (RPAPL) § 853 .................................... 6, 16, 18

**Other Authorities**

Restatement (Second) of Contracts § 224 (1981) ............................................................ 8

Plaintiff 429-441 86th Street LLC respectfully submits this Memorandum of Law in Support of Plaintiff's Motion to Dismiss or Transfer the Counterclaims set forth in Defendant Town Sports International Holdings, Inc.'s Answer, Affirmative Defenses, and Counterclaims ("Defendant's Counterclaims" or the "Counterclaims").

## Preliminary Statement

Plaintiff brought an action to enforce Defendant's absolute and unconditional guaranty of a commercial real estate lease. Instead of defending the case in New York County Supreme court, where it may well have been adjudicated on the merits by now pursuant to the expedited procedures of CPLR 3213, Defendant removed the action in an apparent effort to delay and frustrate Plaintiff's entitlement to a recovery on that guaranty. As a purely dilatory litigation tactic, Defendant then filed Counterclaims that are: (1) unrelated to the guaranty that is the subject of this action; (2) patently deficient; and (3) subject to the jurisdiction of the United States Bankruptcy Court for the District of Delaware.[1] Consequently, the Court should dismiss Defendant's counterclaims or, alternatively, sever them and transfer them to the U.S. District Court of Delaware, where they will be referred to its Bankruptcy Court for disposition.[2]

## Factual and Procedural Background

On September 5, 2006, plaintiff 429-441 86th Street LLC ("Plaintiff" or "Landlord") and TSI Bay Ridge 86th Street, LLC ("Tenant") entered into a lease dated as of August 2006 (Sainty

---

[1] Defendant also persuaded the Court to adopt a schedule permitting discovery on its Counterclaims and Plaintiff's motion, and to postpone briefing on Plaintiff's still pending motion for summary judgment to enforce the Guaranty. As set forth in Plaintiff's April 19, 2021 letter to the Court (ECF Doc. 22), Plaintiff's action on the Guaranty is entirely distinct and separable from Defendant's newly interposed counterclaims, and we respectfully request that the Court reconsider its scheduling order.

[2] Upon transfer to the District Court of Delaware, this Action would be automatically referred to the Delaware Bankruptcy Court. *See* Amended Standing Order of Reference (D. Del. Feb. 29, 2012).

Decl.,[3] Ex. 2; the "Lease") for a portion of the premises located at 439 86th Street, Brooklyn, New York (the "Premises"). *See also* Counterclaims ¶ 90. In connection therewith, Tenant's ultimate corporate parent, defendant Town Sports International Holdings, Inc. ("Defendant" or "Guarantor"), executed an absolute and unconditional written guaranty (Sainty Decl., Ex. 3; the "Guaranty") of Tenant's obligations under the Lease. *Id.* ¶ 91.

**First Amendment of Lease**

Beginning April 1, 2020, Tenant failed to pay rent and other sums due under the Lease. *See* First Amendment (defined below) at 1 (recitals).

On August 31, 2020, Plaintiff and Tenant entered into a First Amendment of Lease (Sainty Decl., Ex. 4; the "First Amendment"), which, *inter alia*, conditionally terminated the Guaranty executed by Defendant in favor of a Replacement Guaranty from Town Sports International, LLC ("Replacement Guarantor"), subject to reinstatement under certain conditions. *See, e.g.,* First Amendment at 1.[4]

Specifically, Section 9 of the First Amendment provides that if Tenant were to file for relief under the Bankruptcy Code, and thereafter reject or seek to reject the Lease, then "(x) the amendments to the Lease under this Amendment shall be deemed void *ab initio* and the Lease and Original Guaranty shall remain in full force and effect and (y) [Plaintiff] may pursue any and

---

[3] "Sainty Decl." refers to the accompanying Declaration of Stella L. Sainty dated April 30, 2021, and exhibits thereto.

[4] The recitals to the First Amendment state: "Landlord and Tenant desire to (i) extend the term of the Lease (ii) further amend and modify the Lease; and (iii) *subject to section 9 below*, terminate the [] Guaranty in favor of the Replacement Guaranty (as hereinafter defined), as hereinafter set forth in this Amendment" (emphasis supplied). *See also* First Amendment at 3, Section 6 (termination of Guaranty is "*[s]ubject to section 9 below*" (emphasis supplied).

all remedies under the Lease and Guaranty under applicable law or in equity." First Amendment at 4.[5]

The second paragraph of Section 9 furthermore provides:

> Notwithstanding the foregoing and anything to the contrary contained in the above paragraph of this Paragraph 9 or the Lease, should Tenant and Replacement Guarantor file bankruptcy and the Lease (as amended) is rejected and [Defendant] does not file for bankruptcy and seeks an assignment from the [Plaintiff] of the Lease (as amended), [Plaintiff] shall consent to such assignment, whereupon the Lease (as amended) shall be deemed a direct Lease (as amended) between [Plaintiff] and [Defendant] provided that [Defendant] cures on or before the effective date of the assignment, all defaults and amounts due and owing to [Plaintiff] under the Lease (as amended) from the Effective Date of this Amendment through and including the effective date of assignment of the Lease (as amended) to [Defendant].

First Amendment at 5.

In connection with the First Amendment, Defendant executed a reaffirmation of its obligations under the Guaranty. *See* First Amendment at 7.

**Delaware Bankruptcy Court Proceedings**

On September 14, 2020, while Tenant was still owned by Defendant, Tenant and Replacement Guarantor (together, the "Debtors") filed voluntary petitions (Sainty Decl., Ex. 8; the "Voluntary Petition") for relief under chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware ("Delaware Bankruptcy Court" or "Del. Bankr.").[6]

---

[5] Defendant baldly misquotes Section 9 and, as a result, misrepresents the meaning of the provision. Counterclaims ¶ 93 (omitting underlined text: "(x) the amendments to the Lease under this Amendment shall be deemed void *ab initio* and the Lease and Original Guaranty shall remain in full force and effect").

[6] Case No. 20-12168 (Jointly Administered) (the "Delaware Bankruptcy Case"). The Court may take judicial notice of related litigation in other courts. *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) ("A court may take judicial notice of a document filed

On October 15, 2020, the Delaware Bankruptcy Court entered an order granting the Debtors' motion to, *inter alia*, reject the Lease (Sainty Decl., Ex. 9; the "Rejection Order"). The Debtors subsequently terminated the Lease effective October 15, 2020, pursuant to that certain Stipulation Between Debtors and 429-441 86th Street LLC with Respect to Administrative Expense Claims (Fiedler Decl.,[7] Ex. 1; the "Stipulation").

Under the terms of the Rejection Order, Delaware Bankruptcy Court retained jurisdiction with respect to interpretation and implementation of its Order. *See* Rejection Order ¶ 10.

On November 3, 2020, the Debtors filed their Amended Chapter 11 Plan of Liquidation (Sainty Decl., Ex. 10; the "Plan") and its related disclosure statement.

On December 1, 2020, Plaintiff filed two proofs of claim in the Delaware Bankruptcy Case, bearing numbers 21036 (against Tenant) and 21037 (against the Replacement Guarantor).

On December 7, 2020, Plaintiff filed a notice of opt-out and limited objection to the Plan (Sainty Decl., Ex. 11; the "Limited Objection"), explicitly preserving Plaintiff's right to pursue its claims against Defendant, including enforcement of the Guaranty that is the subject of Plaintiff's pending motion for summary judgment.[8]

On December 16, 2020, Plaintiff filed amended proofs of claim numbers 21385 (against Tenant) and 21387 (against the Replacement Guarantor), asserting claims for administrative rent under Section 365 of the Bankruptcy Code in the amount of not less than $311,897.98.

---

[7] in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (internal quotation marks omitted)).

[7] "Fiedler Decl." refers to the accompany Declaration of Alyson Fiedler dated April 30, 2021, and the exhibit thereto.

[8] Plaintiff's preservation of its right to pursue claims against Defendant arising out of its Guaranty was, as described above, expressly contemplated by Section 9 of the First Amendment.

On December 18, 2020, the Delaware Bankruptcy Court entered an order confirming the Debtors' Plan (Sainty Decl., Ex. 12; the "Confirmation Order"). Paragraph 69 of the Confirmation Order expressly preserves Plaintiff's right to pursue this action to enforce the Guaranty against Defendant, by excepting Plaintiff, as a "non-Releasing Party," from the "Third-Party Release" that would have otherwise operated in favor of Defendant, as the Tenant-Debtor's owner. *Id.* ¶ 69. Rather, the Confirmation Order provides that the "Third-Party Release shall not operate to release any rights, claims and remedies of [Plaintiff] against non-debtor guarantor, [Defendant] Town Sports International Holdings, Inc…." *Id.*

Under the terms of the Confirmation Order, Delaware Bankruptcy Court retained "exclusive jurisdiction over the matters arising in, and under, and related to, these Chapter 11 Cases…." *Id.* ¶ 113.

On January 11, 2021, Plaintiff and Debtors entered into a Stipulation pursuant to which Plaintiff and Debtors agreed, among other things, that, as of October 15, 2020, the Lease terminated, and all property remaining on the Premises abandoned. *See* Stipulation ¶¶ 2-3.

**TMPL Bay Ridge 86th LLC**

On November 13, 2020, an attorney for TMPL Bay Ridge 86th LLC ("TMPL"), which claimed to be an affiliate of Defendant, sent a letter on behalf of TMPL by email to Gary Kahn, one of Plaintiff's attorneys, purporting to exercise Defendant's rights under the second paragraph of Section 9 of the First Amendment to obtain an assignment of the Lease from Plaintiff to TMPL (Kahn Decl.,[9] Ex. 1; the "TMPL Letter").

---

[9] "Kahn Decl." refers to the accompanying Declaration of Gary I. Kahn dated April 30, 2021, and the exhibit thereto.

**The Instant Action**

On January 11, 2021, Plaintiff commenced this action by motion for summary judgment in lieu of complaint, pursuant to CPLR 3213, in New York County Supreme Court. *See* Sainty Decl. ¶ 4, Ex. 1.

By Notice of Removal dated February 17, 2021 (Sainty Decl., Ex. 6), Defendant removed the action to this Court on the ground that Defendant, a citizen of Delaware and Florida, is completely diverse from Plaintiff, a New York citizen, for purposes of jurisdiction.

By Answer, Affirmative Defenses, and Counterclaims dated March 23, 2021 (Sainty Decl., Ex. 7), Defendant interposed the Counterclaims, which seek: (1) damages for Plaintiff's alleged breach of the second paragraph of Section 9 of the First Amendment, namely, that "Plaintiff has inexcusably refused to consent to assign the Lease in direct violation of its obligations to do so under the Lease, as amended" *see id.* ¶ 110; and (2) an injunction affirmatively granting Defendant possession of the Premises and awarding it treble damages for alleged unlawful ejectment pursuant to RPAPL § 853. *Id.* ¶ 113 *et seq.*

In its answer, Defendant further asserted that "Plaintiff lacks standing and the Court lacks subject-matter jurisdiction." *Id.* ¶ 71 (third affirmative defense).

## Argument

## I.

### DEFENDANT'S COUNTERCLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, in evaluating a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should

"draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (citation and internal quotation marks omitted).

The court need not, however, credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also id.* at 681. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor does a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Thus, the court should "accept[ ] all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (internal quotation marks omitted).

**A.** **Defendant's First Counterclaim for Breach of Contract Must Be Dismissed With Prejudice**

*1. Defendant Fails to Plausibly Allege Satisfaction of a Condition Precedent*

Federal Rules of Civil Procedure 9(c) provides that, "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity." Although "[n]either the Supreme Court nor the Second Circuit Court of Appeals has considered Rule 9(c) since *Iqbal* and *Twombly* modified the notice pleading standard,"[10] the Second Circuit has held, however, that "*Iqbal* makes clear that, Rule 9(b)'s

---

[10] *O.F.I. Imports Inc. v. Gen. Elec. Capital Corp.*, No. 15-CV-7231 (VEC), 2017 WL 3084901, at *5 (S.D.N.Y. July 20, 2017); *Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 736 F. App'x 274, 276 (2d Cir. 2018) ("[W]e have not interpreted Rule 9(c) since the Supreme Court's adoption of the

language notwithstanding, Rule 8's plausibility standard applies to pleading intent" thereunder. *Biro v. Condé Nast*, 807 F.3d 541, 544-45 (2d Cir. 2015); *see* Fed. R. Civ. P. 9(b) ("[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally").

Thus, "see[ing] no principled basis" for distinguishing *Iqbal*'s application to Rule 9(c), courts in this District have dismissed contract claims for failure to "plausibly" allege satisfaction of a condition precedent following the Supreme Court's holdings in *Twombly* and *Iqbal*. *Dervan v. Gordian Grp. LLC*, No. 16-CV-1694 (AJN), 2017 WL 819494, at *6 (S.D.N.Y. Feb. 28, 2017); *O.F.I. Imports Inc. v. Gen. Elec. Capital Corp.*, No. 15-CV-7231 (VEC), 2017 WL 3084901, at *5 (S.D.N.Y. July 20, 2017); *Comerica Leasing Corp. v. Bombardier Inc.*, No. 16 CIV. 614 (PGG), 2019 WL 11027701, at *8 (S.D.N.Y. Sept. 30, 2019); *see also Napster, LLC v. Rounder Records Corp.*, 761 F. Supp. 2d 200, 208-09 (S.D.N.Y. 2011) (dismissing breach of contract claim where Napster's general allegation that it "has performed all of the terms and conditions required to be performed by it under the 2006 Agreement" was an insufficient "legal conclusion"). *Cf. Chesapeake Square Hotel, LLC v. Logan's Roadhouse, Inc.*, 995 F. Supp. 2d 512, 517-18 (E.D. Va. 2014) (complaint alleged sufficient facts to plausibly state a claim for specific performance of contract).

In New York, "[a] condition precedent is 'an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises.'" *Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12, 22 (2d Cir. 2018) (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (1995) (citation omitted); Restatement (Second) of Contracts § 224 (1981)). "Under New York law, the

---

plausibility pleading standard" and "need not resolve that issue here because Zam & Zam raises this argument for the first time on appeal and, thus, forfeits it.").

failure to satisfy a condition precedent 'excuses performance by the other party whose performance is so conditioned.'" *Id.* (quoting *Merritt Hill Vineyards Inc. v. Windy Heights Vineyard, Inc.*, 61 N.Y.2d 106, 113 (1984)). "Express conditions must be literally performed; substantial performance will not suffice." *MHR Capital Partners v. Presstek*, 12 N.Y.3d 640, 691 (2009) (recognizing that use of terms such as "if," "unless" and "until" constitute "unmistakable language of condition"). Where, as here, the provisions of a commercial lease are unambiguous, "the only question for the court is whether the condition precedent has been complied with." *Comerica*, 2019 WL 11027701 at *13 (citing *David Fanarof, Inc. v. Dember Const. Corp.*, 195 A.D.2d 346, 348 (1st Dept. 1993)).

Here, Defendant's first counterclaim for breach of contract fails plausibly to allege the performance of an express condition precedent: Defendant alleges no facts whatsoever regarding the who, what, when or how it sought an assignment of the Lease from Tenant.[11] The second paragraph of Section 9 of the First Amendment provides, in pertinent part: "[i] should Tenant and Replacement Guarantor file bankruptcy and [ii] the Lease (as amended) is rejected and [iii] [Defendant] does not file for bankruptcy and [iv] seeks an assignment from the [Plaintiff] of the Lease (as amended), [Plaintiff] shall consent to such assignment[.]" First Amendment at 5. Satisfaction of conditions [i]-[iii] are not in dispute; indeed, Plaintiff established as much with its commencement papers, which included documents filed in the Delaware Bankruptcy Case of which the Court may take judicial notice.[12]

---

[11] After Tenant filed a voluntary petition on September 14, 2020, Defendant would have had to seek an assignment from the Tenant-Debtor, who would then apply for authorization in the Delaware Bankruptcy Case to assume and assign the Lease. *See* Point I.A.3, *infra*.

[12] *See* Sainty Decl., ¶¶ 11-12 and Exs. 8-9.

Defendant's Counterclaims are, however, utterly devoid of factual allegations to support the satisfaction of condition [iv], namely, that *Defendant* ever sought an assignment of the Lease. Conclusory allegations, such as "since the explicit provisions of Section 9 of the [First Amendment] have been satisfied" (Counterclaims ¶ 104), do not suffice. *Comerica*, 2019 WL 11027701 at *13 (finding that Comerica's allegation that property under lease was "made available" did not plausibly allege its "return" as required to satisfy condition precedent); *Napster*, 761 F. Supp. 2d at 208 (allegation that Napster "performed all of the terms and conditions required to be performed by it under the 2006 Agreement…" was merely a legal conclusion).

Nor is it sufficient to imply that all conditions were satisfied suggested by Defendant's misleading recharacterization of *four* conditions precedent as merely two (Counterclaims ¶ 99: "[u]pon the bankruptcy filings of the Tenant and Replacement Guarantor, Plaintiff was required by the First Amendment of Lease to consent to an assignment of the Lease"). *O.F.I. Imports*, 2017 WL 3084901, at *6 (finding that OFI plausibly alleged occurrence of only two of four conditions precedent, and that its "conclusory and befuddling averment that it has not performed 'any act which performance by OFI has been prevented by GE Capital or any act which performance would have been futile' was threadbare and insufficient).

Plaintiff is entitled to notice of when Defendant sought an assignment from Plaintiff, how Defendant sought such an assignment (by e-mail, letter, orally), through whom Defendant acted and to whom the communications were directed.[13] Defendant has completely failed to allege any such facts. Accordingly, Defendant's counterclaim for breach of contract must be dismissed.

---

[13] By analogy, to comply with Rule 9(b), a party must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made,

### 2. *Defendant Did Not Seek an Assignment of the Lease and Its Allegation to the Contrary Is Provably False*

Defendant never sought such an assignment and never followed the Bankruptcy Court procedures necessary to do so. Rather, on November 13, 2020, a separate entity, TMPL, which claimed to be an affiliate of Defendant, sent a letter to Plaintiff's counsel purporting to notify Plaintiff that **TMPL** sought to exercise Defendant's rights under Section 9 for an assignment *to* **TMPL** of the Lease. Such third-party assignment was not contemplated, let alone required, by the First Amendment.

Under the First Amendment, only *Defendant* had the right to seek assignment of the Lease from Tenant. *See* First Amendment at 5 (Section 9). Plaintiff's only agreement under this express language was to "consent" (assuming all conditions were met) to such assignment *sought by Defendant*, not a stranger to the transaction (TMPL). Moreover, neither TMPL nor Defendant sought an assignment of the Lease from Tenant as Debtor in Delaware Bankruptcy Court, which Defendant certainly could have done because it *owned and controlled* the Tenant-Debtor and appeared by counsel in the Delaware Bankruptcy Case.

Accordingly, Defendant's First Counterclaim for breach of contract should be dismissed with prejudice.

### 3. *Neither Defendant nor TMPL Sought an Assignment from the Debtor-Tenant in Bankruptcy Court*

Delaware Bankruptcy Court was, and remains, the exclusive jurisdiction for disputes over the Tenant-Debtor's election to "assume," "assume and assign," or "reject" a lease under section 365 of the Bankruptcy Code. *See* 28 U.S.C. § 1334(e); *and see* Point II.A, *infra*. Section 365 of

---

and (4) explain why the statements were fraudulent." *Fernandez v. UBS AG*, 222 F. Supp. 3d 358, 387-88 (S.D.N.Y. 2016) (citing *Lerner v. Fleet Bank*, 459 F.3d 273, 290 (2d Cir. 2006)).

the Bankruptcy Code authorizes a debtor—and *only* the debtor—to elect to assume or reject unexpired leases through the exercise of its business judgment. 11 U.S.C. § 365(a). A debtor may assume and assign an unexpired lease (like the Lease here as of the Tenant's Petition Date), provided that the debtor cures all existing defaults and provides the landlord with adequate assurances of future performance. § 365(b). If a debtor rejects an unexpired lease, the bulk of the landlord's claim will ordinarily be considered a prepetition claim. § 365(g).

The Debtor has the exclusive power to elect to assume or reject a lease. *In re Chateaugay Corp.*, 10 F.3d 944, 955 (2d Cir. 1993). "Section 365 does not confer any power of election upon the other contracting party." *Id.* A debtor's authority to assume or reject unexpired leases and executory contracts "is vital to the basic purpose [of] a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization." *N.L.R.B. v. Bildisco*, 465 U.S. 513, 528 (1984). "The Bankruptcy Code places the option of assuming or rejecting executory contracts with the debtor, not with its business partners. To disturb this mechanism would unbalance the Code's overriding policy favoring debtor reorganization and rehabilitation." *See In re Pub. Serv. Co. of New Hampshire*, 884 F.2d 11, 15 (1st Cir. 1989) (denying creditor motion to set off prepetition amounts owed to debtors against rejection damages claim, where executory contract at issue had not yet been assumed or rejected, denying creditor argument that the executory contract should be deemed rejected); *See In re Extraction Oil & Gas*, 622 B.R. 608, 615 (Bankr. D. Del. 2020) (noting that a bankruptcy court cannot substitute its own judgment for that of the debtor and that absent a showing of bad faith or abuse of discretion, a debtor's business judgment will not be altered.).

The First Amendment only required Plaintiff to consent to an assignment of the Lease, provided certain conditions are met. Since the Defendant never sought an assignment of the

Lease from the Tenant, there was no assignment to which Plaintiff could consent. Thus, Defendant's argument must fail as a matter of law. The Bankruptcy Code expressly prohibits Plaintiff (and Defendant) from subverting the Tenant-Debtor's exclusive election to *reject* and terminate the Lease, to which Defendant (Tenant's corporate parent as of the Petition Date) later asserts the right to an assignment. Had Defendant desired an assignment of its subsidiary's interest as a tenant under the Lease, it could have easily done so in the Delaware Bankruptcy Case (that it was required to actually authorize by corporate resolution). Instead, well after the Tenant effectively rejected and terminated the Lease (pursuant to the Delaware Bankruptcy Court's final Rejection Order), and only after Plaintiff thereafter legitimately demanded payment under Defendant's guaranty did Defendant profess the right to step into its subsidiary's (the Tenant's) shoes as a tenant under the Lease—which its subsidiary (the Tenant) had rejected. Defendant's arguments are disingenuous.

Similarly, if, as the Defendant appears to argue, Section 9 of the First Amendment does not require Defendant to obtain Tenant's consent to assume and assign the Lease, that is tantamount to a prepetition agreement to assume an unexpired lease. Prepetition agreements to assume an unexpired lease, as well as prepetition waivers of the right to reject an unexpired lease, violate public policy and are, therefore, void. *In re Trans World Airlines, Inc.*, 261 B.R. 103, 114 (Bankr. D. Del. 2001) (authorizing debtor to reject prepetition executory contract under which debtor had agreed to sell airline tickets at a substantial discount, voiding language in contract purporting to waive the debtor's right to reject the agreement as unenforceable as a matter of public policy); *see In re Extraction Oil & Gas*, 622 B.R. at 615 n.7 (citing *In re Trans World Airlines, Inc.*); *In re Old Carco LLC*, 424 B.R. 633, 639 (Bankr. S.D.N.Y. 2010) ("A

debtor's statutory right to reject cannot be qualified by requirements not set forth in the Bankruptcy Code itself.").

As Chief Judge Walsh stated in *Trans World Airlines*:

> It seems to me that a debtor's prepetition agreement not to reject an executory contract, or conversely, to assume such a contract, violates public policy in that it purports to bind the debtor-in-possession to a course of action without regard to the impact on the bankruptcy estate, other parties with a legitimate interest in the process or the debtor-in-possession's fiduciary duty to the estate.

*Id.*

Defendant may not prevent the Debtor from exercising its business judgment on whether to assume and assign a lease any more than Plaintiff can force the Debtor to assume and assign the Lease to Defendant. *See In re Chateaugay Corp.*, 10 F.3d at 955. Defendant was heavily involved in the Debtors' bankruptcy case to the point where it received a third-party release under the Debtors' plan of liquidation. *See* Plan at 10 (definition of Released Party). On information and belief, Defendant had actual and timely notice of the Debtors' Rejection Motion. Yet, Defendant did nothing.

If Defendant wanted to take an assignment of the Lease, it had several weeks between the filing of the Rejection Motion and the hearing on the motion (if not longer because the Defendant owned the Debtors) to contact the Debtor and Plaintiff and notify them of its desire to take an assignment. It failed to do so. Instead, the Debtors, exercising their business judgment and pursuant to a final Court order, rejected the Lease. *See* Rejection Order. Now that the Plan has been confirmed and the Lease has been terminated, it is too late for Defendant to obtain an assignment of the Debtors' interest in the Lease. *See Fla. Dep't of Revenue v. Piccadilly*

*Cafeterias, Inc.*, 554 U.S. 33, 46 (2008) ("the decision whether to reject a contract or lease must be made before confirmation.").[14] The Defendant sat on its rights.

### 4.    *Notice of the Improper Assignment was Defective*

The TMPL Letter did not qualify as effective notice because neither letter complied with the requirements of Section 26.1 of the Lease, as amended. That section requires that all notices be either "(a) delivered by hand (against a signed receipt), (b) sent by registered or certified mail (return receipt requested), or (c) sent by a nationally-recognized overnight courier. Under the original terms of the Lease, notices to Plaintiff were to be sent directly to Plaintiff with a copy to the Law Offices of Gary I. Kahn. The First Amendment modified Section 26.1 of the Lease to update the address for Plaintiff and remove the requirement that a copy be sent to the Law Offices of Gary I. Kahn.

The TMPL Letter is defective because (a) it was sent by email, rather than by hand delivery, registered or certified mail, or overnight courier and (b) it was only sent to the Law Offices of Gary I. Kahn, and ***not*** to Plaintiff directly, as required by Section 26.1 of the Lease. Accordingly, Defendant's First Counterclaim for breach of contract should be dismissed with prejudice.

### 5.    *The Lease Terminated Before TMPL Sent Its Letter*

In addition to being defective, the TMPL Letter was also untimely. The Lease had already terminated by the time the TMPL Letter was sent. The Debtor elected to terminate the Lease as of October 15, 2020 in connection with the Rejection Order and Stipulation. The TMPL Letter

---

[14] Had Defendant sought to obtain an assignment of the Lease in the Debtors' Delaware Bankruptcy Case, the Debtor—and the Defendant pursuant to Section 9 of the First Amendment—would have been required to cure all defaults under the Lease and the First Amendment, including the Pre-Amendment Rent, as such term is defined in the First Amendment.

15

was not sent until November 13, 2020. Section 9 of the First Amendment expressly contemplates an "assignment" of the existing Lease: it does not require Plaintiff to enter into a new lease with Defendant on the same terms as the Lease. Once the Lease terminated, there was no leasehold interest right left to assign. *See In re Cohoes Indus. Terminal, Inc.*, 70 B.R. 214, 219 (S.D.N.Y. 1986), *aff'd sub nom. In re Cohodes Indus. Terminal Inc.*, 831 F.2d 283 (2d Cir. 1987) (holding that since the debtor's leasehold interest had terminated, there was nothing for the debtor to transfer).

**B.**     **Defendant's Second Counterclaim for Unlawful Eviction Pursuant to RPAPL § 853 Must Be Dismissed With Prejudice**

   *1.*     ***Defendant Lacks Standing to Invoke the Protections of RPAPL § 853 Because It Was Never A Party to the Lease or in Possession of the Premises***

Section 853 of New York Real Property Actions and Proceedings Law ("RPAPL") provides:

> If a person is disseized, ejected, or put out of real property in a forcible manner, or, after he has been put out, is held and kept out by force or by putting him in fear of personal violence or by unlawful means, he is entitled to recover treble damages in an action therefor against the wrong-doer.

Defendant fails to state a claim for violation of RPAPL § 853 because it is not a party to the Lease, *Dinger v. Cefola*, 133 A.D.3d 816, 817 (2d Dept 2015) (complaint failed to state a cause of action for wrongful eviction in violation of RPAPL § 853 because it did not allege that the plaintiff was a tenant entitled to possession of the premises at issue); *Bozewicz v. Nash Metalware Co.*, 284 A.D.2d 288, 288-89 (2d Dept 2001) (individual plaintiff who was not a party to the commercial lease could not recover treble damages under RPAPL § 853), and was never in possession of the Premises. *Gold v. Schuster*, 264 A.D.2d 547, 550 (1st Dept. 1999) ("[a] claim under [RPAPL § 853] is only available to one evicted from property of which he or she was in

actual possession."); *ZCWK Assocs., L.P. v. Spadaro*, 233 A.D.2d 126, 127 (1st Dept. 1996) (claim under RPAPL § 853 was "without merit because the tenant never moved into the premises").

Defendant alleges only that "Plaintiff was contractually required to consent to an assignment of the Lease to TSI." Counterclaim ¶ 115. But even assuming that Defendant was assigned the Lease, a mere out-of-possession assignee of a lease following the original tenant's filing for chapter 11 bankruptcy relief does not have standing to invoke the protections of RPAPL § 853. *Gold*, 264 A.D.2d at 550 (none of the various statuses alleged by plaintiff — that he was an assignee of the original lease, the tenant's sublessor, and the holder of a security interest in the personalty that was allegedly removed from the premises — entitled him to invoke the protections of RPAPL § 853).

Defendant does not allege that it had "constructive" possession of the Premises, but if it were to do so now, that argument would also fail because Defendant's claimed right to an assignment of the Lease has not been adjudicated by any court. Constructive possession exists where the party "had the title in fee, or an absolute right of possession by some other grant, and who would therefore be entitled to actual possession, but for the forcible holding out of it." *Runquist v. Koeppel*, 146 Misc. 2d 569, 571, 551 N.Y.S.2d 765, 767 (Civ. Ct., NY County 1990). "Until such time as a Court determines the withholding of consent to the sublet was unreasonable, as only a Court may determine and not the parties, the sublease does not confer any right of occupancy upon Petitioner[.]" *Id.* (prospective subtenant who has only an "unconsented-to sublease" does not have "a valid grant by which to claim possession," constructive or otherwise, as required to invoke RPAPL § 853). Defendant cannot cure the defect in its allegations, and, accordingly, its second counterclaim should be dismissed with prejudice.

### 2. *Plaintiff Cannot Be Liable for Wrongful Eviction under RPAPL § 853 Because Tenant Abandoned the Premises and Terminated the Lease*

Where the party entitled to possession abandons the premises, landlord cannot be liable for wrongful eviction pursuant to RPAPL § 853. *Video Voice, Inc. v. Loc. T.V., Inc.*, 156 A.D.3d 848, 850 (2d Dept 2017); *Salem v. U.S. Bank Nat'l Ass'n*, 82 A.D.3d 865, 866 (2d Dept. 2011); *Nieves v. 331 E. 109th St. Corp.*, 112 A.D.2d 59, 60 (1st Dept. 1985) (reversing award of treble damages, finding that at the time of the complained-of entry, the plaintiffs had vacated the premises, relocated, removed most of their personal property and ceased paying rent, demonstrating their abandonment of the demised premises). Here, Tenant's abandonment of the Premises was memorialized in the Stipulation Between Debtors and 429-441 86th Street LLC with Respect to Administrative Expense Claims (the "Stipulation"), pursuant to which Plaintiff and Debtors agreed, among other things, that, as of October 15, 2020, the Lease was terminated (¶ 2) and all property remaining on the Premises abandoned (¶ 3).

Accordingly, Defendant's second counterclaim under RPAPL § 853 should be dismissed with prejudice.

## II.

## DEFENDANT'S COUNTERCLAIMS MUST BE HEARD, IF AT ALL, IN DELAWARE BANKRUPTCY COURT

Given the primacy of the bankruptcy issues at the heart of Defendant's Counterclaims, even if Defendant's Counterclaims plausibly state a claim for relief—which they do not—they should be dismissed because Delaware Bankruptcy Court has and retains exclusive jurisdiction over Defendant's Counterclaims, depriving this Court of subject matter jurisdiction; or, in the alternative, the Court should sever the Counterclaims and transfer venue to the United States District Court for the District of Delaware pursuant to 28 U.S.C. §§ 1404(a), and 1412.

Courts consistently "recognize the strong public policy favoring centralization of bankruptcy proceedings in a bankruptcy court." *Kurz v. EMAK Worldwide, Inc.*, 464 B.R. 635, 641 (D. Del. 2011) (citing *In re Mercury Masonry Corp.*, 114 B.R. 35, 39 (Bankr. S.D.N.Y. 1990)); *In re Wheeling-Pittsburgh Steel Corp.*, 108 B.R. 82, 85 (Bankr. W.D. Pa. 1989). There is a "home court" presumption that "provides that the court in which the bankruptcy case itself is pending is the proper venue for adjudicating all related litigation, including those suits which have been filed in other state or federal courts." *Hohl v. Bastian*, 279 B.R. 165, 177 (W.D. Pa. 2002).

A.    **Bankruptcy Court Has Exclusive Jurisdiction over Defendant's Counterclaims**

The Bankruptcy Court is the exclusive jurisdiction for disputes involving property of a debtor's bankruptcy estate. Specifically, 28 U.S.C. § 1334(e) provides: "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." A lease is both a conveyance of an interest in property and a contract under New York law. *219 Broadway Corp. v. Alexander's, Inc.*, 46 N.Y.2d 506, 509 (1979) (citation omitted). Thus, the Tenant's interest in the Lease (and, thus the Premises) is "property of the [Tenant's bankruptcy] estate, pursuant to sections 365 and 541 of the Bankruptcy Code, invoking § 1334(e) "exclusive jurisdiction."

The Defendant-Guarantor authorized its subsidiary (the Tenant) to file for bankruptcy relief in Delaware (not New York). It then sat silently, while its wholly-owned subsidiary, the Tenant: (i) rejected (by order of the Delaware Bankruptcy Court, on notice to it) and terminated the Lease; and (ii) confirmed the Plan, memorialized by the Confirmation Order, which explicitly

carved out and preserved Plaintiff's right to assert claims on the Guaranty under the Lease

against Defendant[15]—all without objection from Defendant, notwithstanding its right to do so.

Moreover, the Delaware Bankruptcy Court's orders confirm and adopt the exclusive

jurisdiction granted by Section 1334(e). More specifically, in paragraph 10 of the Rejection

Order, the Bankruptcy Court states that it "shall retain jurisdiction with respect to all matters

arising from or related to the implementation or interpretation of [the] Order." Similarly, under

Article XII of the Plan and Section KK (¶ 113) of the Confirmation Order confirming the Plan,

the Bankruptcy Court "retains exclusive jurisdiction over the matters arising in, and under, and

related to, [the Debtors'] Chapter 11 Cases…."

The Defendant's principal counterclaim is that Plaintiff breached the First Amendment by

failing to consent to the assignment of the Lease to Defendant as a direct tenant, which

implicates several issues that are at the heart of the Tenant's bankruptcy proceeding: most

notably whether a debtor-tenant may assign a Lease that has already been rejected (by Order of

the Delaware Bankruptcy Court) and terminated, and whether a pre-bankruptcy contract

provision that implicitly requires a debtor-tenant to assume and assign its lease to a guarantor is

enforceable. All of these issues should be decided by the Bankruptcy Court. *See, e.g.*,

*Kalamazoo-Realty Venture Limited Partnership v. Blockbuster Entertainment Corp.*, 249 B.R.

879 (D. Ill. 2000) (transferring venue of landlord's action against guarantor of debtor's lease to

---

[15] By contrast, under the Plan and Confirmation Order, Plaintiff's rights to pursue this action to enforce the Guaranty against Defendant-Guarantor were explicitly preserved. Paragraph 69 of the Confirmation Order expressly preserves Plaintiff's right to pursue this action to enforce the Guaranty against Defendant, by excepting Plaintiff, as a "non-Releasing Party," from the "Third-Party Release" that would have otherwise operated in favor of Defendant, as the Tenant-Debtor's owner. *Id.* ¶ 69. Rather, the Confirmation Order provides that the "Third-Party Release shall not operate to release any rights, claims and remedies of [Plaintiff] against non-debtor guarantor, [Defendant] Town Sports International Holdings, Inc…." *Id.*

jurisdiction where debtor's bankruptcy case was proceeding due to primacy of bankruptcy issues).

The effect of the Tenant's rejection and termination of the Lease (which is guaranteed by Defendant) pursuant to section 365 of the Bankruptcy Code, as authorized by the Delaware Bankruptcy Court Order, following notice to all stakeholders, including the Defendant (Tenant's corporate parent), is an issue properly before the Bankruptcy Court, which expressly retained jurisdiction to interpret its own Order. *See* ¶ 10 of the Rejection Order.

These "bankruptcy related issues" were raised, for the first time, in this Court, following removal of Plaintiffs' action to enforce the Guaranty. The Defendants' invocation of federal jurisdiction, seeking to revisit the Bankruptcy Court's earlier Rejection Order by seeking a re-interpretation of the Lease in another court implicates, and runs afoul of, the Bankruptcy Court's exclusive jurisdiction to interpret and enforce its own Orders. *See* 28 U.S.C. § 1334(e). Accordingly, the Court should dismiss Defendant's Counterclaims for lack of subject matter jurisdiction.

**B.     The Court Should Transfer Defendant's Counterclaims in the Interest of Justice**

Transfer of Defendant's counterclaims to the District of Delaware for referral to the Bankruptcy Court is equally appropriate under 28 U.S.C. §§ 1404(a) and 1412. Section 1404(a) of title 28 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). With respect to core bankruptcy proceedings, section 1412 of title 28 authorizes a district court to "transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. While the chief

distinction between the provisions is whether the matter in question is a "core" or "non-core" bankruptcy proceeding, "[c]ourts in this District have determined that the analyses under section 1404 and section 1412 are substantially similar." *In re Lehman Bros. Holdings Inc.*, 594 B.R. 33, 50 (Bankr. S.D.N.Y. 2018) (citing cases and ultimately declining to transfer venue of cases out of the bankruptcy court).

"When considering whether to grant a request for transfer of venue pursuant to section 1404(a), courts examine whether (i) the case could have been brought in the proposed transferee district; and (ii) the convenience of the parties and witnesses and the interest of justice favor transfer." *Id.* Under the first prong, this case could have been commenced in Delaware because the Defendant is incorporated in Delaware. *See* 28 U.S.C. § 1391(b)(1).

Additionally, the Defendant has submitted itself to the jurisdiction of the Bankruptcy Court because it was the corporate parent of the Debtors, caused its wholly-owned subsidiary (the Tenant-Debtor) to reap the benefits of relief under the Bankruptcy Code, including rejection and termination of the Lease, and was actively involved in the Debtors' Delaware Bankruptcy Case and in the formulation and consummation of the Debtors' Plan to the point where the Defendant obtained a limited third-party release under the Debtors' Plan.[16]

Courts typically consider the following factors under the second prong:

> (1) the convenience of witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the

---

[16] Plaintiff opted out of the releases under the Plan specifically to preserve the claims that it has against Defendant. *See* n.15 *supra*. Plaintiff effectively preserved its rights and remedies against Defendant (the Original Guarantor of the Tenant-Debtor's Lease) under the Plan, and Defendant filed no objection or opposed Plaintiffs' reservation of rights despite appearing by counsel in the Delaware Bankruptcy Case and affirmatively requesting other relief before the Delaware Bankruptcy Court.

> plaintiff's choice of forum, and (9) trial efficiency and the interest
> of justice, based on the totality of the circumstances."

*Lehman Bros.*, 594 B.R. at 50 (quoting *Berman v Informix Corp.*, 30 F. Supp. 2d 653, 657

(S.D.N.Y. 1998)); *and see Kalamazoo-Realty Venture Limited Partnership*, 249 B.R. at 889

(considering similar factors).

Most of these factors are inconsequential. Given both Plaintiff's and Defendant's involvement in

the Debtors' Delaware Bankruptcy Cases, the District of Delaware and Southern District of New

York are equally convenient for the parties and witnesses and the parties are of relatively similar

means. And as stated above, Plaintiff's original choice of forum should be ignored given

Defendants' newly-leveled Counterclaims that invoke the Bankruptcy Court's Rejection Order,

and the primacy of the resulting bankruptcy issues — all initiated after Plaintiff's

commencement of this lawsuit.

 The remaining factors all weigh heavily in favor of transferring Defendant's

Counterclaims to the District of Delaware.[17] The Bankruptcy Court is best suited to rule on core

bankruptcy law issues with respect to the Debtors' interest in the Lease and the effect of the

Bankruptcy Court's order authorizing the rejection of the Lease. Declining to transfer

Defendant's Counterclaims will almost certainly lead to a duplication of effort, and potentially

conflicting adjudications, as the parties may need to secure from the Bankruptcy Court a

clarification on its prior orders, which would likely require briefing duplicative to that which has

and likely will be filed before this Court, if Defendant's Counterclaims are not transferred. *See*

*Kalamazoo-Realty Venture Limited Partnership*, 249 B.R. at 890 (granting permissive transfer

---

[17] Upon transfer to the District of Delaware, the Counterclaims would automatically be referred to the Delaware Bankruptcy Court. See Amended Standing Order of Reference (D. Del. Feb. 29, 2012).

based, in large part, upon the likelihood that the parties would need to secure a clarification from the bankruptcy court).

Accordingly, the factors weigh in favor of transferring Defendant's Counterclaims to the District of Delaware for referral to the Bankruptcy Court.

### III.

### DEFENDANT'S THIRD AFFIRMATIVE DEFENSE FOR WANT OF DIVERSITY JURISDICTION SHOULD BE STRICKEN

On February 17, 2021, Defendant removed this case to federal court based on diversity jurisdiction. Defendant, a corporation, claims citizenship of Delaware, its state of incorporation, and Florida, where it supposedly maintains a principal place of business. *See* Notice of Removal ¶ 15. Nevertheless, on March 23, 2021, Defendant filed an answer with a Third Affirmative Defense contending that "the Court lacks subject-matter jurisdiction." Answer ¶ 71.

In light of its prior removal of this case from state court, Defendant's Third Affirmative Defense must be stricken pursuant to Federal Rules of Civil Procedure 12(f), or Plaintiff's action to enforce the Guaranty remanded. To permit the parties to proceed on Plaintiff's motion for summary judgment in lieu of complaint relying upon the jurisdictional predicates that Defendant submitted were true in support of removal based on diversity jurisdiction — only to have Defendant later decide, strategically or on a whim, that the Court has no subject matter jurisdiction and all proceedings had herein are a legal nullity, would be unduly prejudicial to Plaintiff, and an undue burden on the resources of this Court.

Accordingly, the portion of Defendant's Third Affirmative Defense for lack of subject matter jurisdiction should be stricken, or the Court should order Defendant to show cause why Plaintiff's action on the Guaranty should not be remanded.

24

## <u>Conclusion</u>

Accordingly, for the reasons set forth above, the Court should grant Plaintiff's motion and enter an order:

(A)

     (i)     dismissing with prejudice Defendant's Counterclaims for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6); or

     (ii)    dismissing with prejudice Defendant's Counterclaims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and 28 U.S.C. § 1334(e); or

     (iii)   transferring venue of Defendant's Counterclaims to the United States District Court for the District of Delaware for referral to the Bankruptcy Court pursuant to 28 U.S.C. §§ 1404(a) and 1412;

and (B) striking Defendant's Third Affirmative Defense to Plaintiff's action for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(f); and (C) for such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      April 30, 2021

                        WACHTEL MISSRY LLP

                        By: <u>*/s/Stella L. Sainty*</u>
                        Marc Litt
                        Stella L. Sainty
                        One Dag Hammarskjold Plaza
                        885 Second Avenue, 47th Floor
                        New York, New York 10017
                        mlitt@wmllp.com
                        ssainty@wmllp.com
                        (212) 909-9500

                        *Attorneys for Plaintiff 429-441 86th Street LLC*